UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANF PARTNERS #1,                          *        CIVIL ACTION
A LOUISIANA LIMITED PARTNERSHIP

versus                                    *        NO. 06-4342

LEXINGTON INSURANCE COMPANY               *        SECTION "F"

ORDER AND REASONS

Before the Court is ANF's motion for partial summary judgment to declare liability pursuant to an insurance policy and on its claims for statutory penalties, costs, and attorneys' fees. For the reasons that follow, ANF's motion is DENIED.

Background

Lexington Insurance Co. insured a 336-unit apartment complex known as River View Villas under its insurance policy number 7475165. ANF Partners No. 1, A Louisiana Limited Partnership, the plaintiff, currently owns those apartments, which Hurricane Katrina damaged in August 2005. ANF, however, is not specifically named as a policy loss payee. Instead, the policy listed "CIGNA Corporation, etal. [sic]" as the loss payee. However, on Endorsement #1 (the All Risk Property Form) to the policy, the top of the endorsement reads as follows: "CIGNA CORPORATION (Managed/Owned Properties) and its affiliated, subsidiary, and associated companies and/or corporations as now exist or may hereafter be constituted or acquired HEREINAFTER REFERRED TO AS THE

1

'INSURED'" (emphasis in original).

The parties dispute–and the record is not clear–as to whether ANF has obtained any rights from CIGNA as an insured in the policy or its subsidiary Connecticut General Life Insurance Co. ("CGLIC"). Likewise, the parties dispute whether by virtue of the "et al." language of the policy and the "associated companies" language[1] of Endorsement #1, ANF is the insured party or true beneficiary regardless of any transfer of rights from CIGNA or CGLIC.

The policy provides, in part:

> It shall be necessary for the Insured to render a signed and sworn proof of loss to the Company or its appointed representative stating: the place, time, and cause of the loss, damage, or expense; the interest of the Insured and all others; the value of the property involved in the loss; and the amount of loss, damage, or expense.

(Oddly, neither ANF nor CIGNA or its subsidiary CGLIC had filed a formal Sworn Proof of Loss with Lexington as of November 15, 2006.) By November 15, 2006, Lexington had admitted to CIGNA in writing that it owed at least $507,441.32 under the policy.[2]

---

[1] ANF originated as a joint venture between CIGNA and River View Villas Partnership; River Coastal, L.L.C. later became involved in the venture. After Hurricane Katrina, CIGNA divested itself of any partnership interest in ANF, transferring its remaining 0.1% interest in ANF to River Coastal, L.L.C. in November 2006.

[2] On November 15, 2006, ANF's counsel forwarded an Assignment of Partnership Interest to Lexington's counsel in an attempt to show that ANF was the insured or true beneficiary under the policy. The Assignment was executed by CGLIC and River Coastal, L.L.C., both the sole limited partners in ANF at that time, with

On November 30, 2006, Lexington wrote to CIGNA, explicitly stating that it would pay the $507,441.32 owed under the Policy "pursuant to [CIGNA's] Partial Sworn Statement in Proof of Loss"; Lexington referred to this amount as "the <u>undisputed portion</u> of [CIGNA's] claim."  (emphasis added).³

On December 15, 2006, ANF's counsel again sought payment of the claim by asking Lexington whether CIGNA or ANF should complete the Proof of Loss.  On January 3, 2007, ANF's counsel, obviously frustrated, demanded of Lexington's counsel, "What must my client do to receive the [$507,441.32] which your client admits it owes us?"

Two weeks later, on January 17, Lexington's counsel responded

---

each limited partner owning 0.1% of ANF.  The general partner, River View Villas Partnership, owned the remaining 99.8% partnership interest.  The Assignment purported to "hereby transfer, assign and deliver all of [CGLIC's] rights, title and interest in and to a 0.1% ownership interest in and to ANF to River Coastal."  As a result, CGLIC and its successors and assigns "shall have no ownership or other interest in ANF." Although the parties to the Assignment signed the document, section 12, setting forth the effective date of the Assignment, was never filled in.
    Lexington's counsel responded to ANF the same day it received the Assignment.  Lexington indicated that it would only pay the amount owed under the policy to CIGNA, the company to which "the policy was issued."

    ³ The Partial Sworn Statement in Proof of Loss appears to refer to a standard form Statement of Loss, which lists the Policy number, "the insured <u>Cigna Corp.</u>," the total amount of insurance on the Riverview Villas apartments, and the amount claimed under the Policy ($507,441.32).  The form is neither signed nor dated by CIGNA or ANF, and it is not notarized.

that Lexington had sent a check to CIGNA.[4] However, when ANF contacted CIGNA, it learned that CIGNA had received no check. On January 25, Lexington's counsel acknowledged that no check had been sent to CIGNA; it had been sent instead to Lexington's adjustor.

After the commencement of this lawsuit, Lexington's counsel forwarded a standard form Sworn Proof of Loss, on March 8, 2007, to Karyl Willis, a representative of CIGNA, who had CIGNA execute the statement and forward it to the adjustor who held Lexington's check. The next day, the adjustor mailed the check for $507,441.32 to CIGNA, which receipt CIGNA acknowledged on March 16, 2007.

In light of the check being sent to CIGNA, this Court ordered supplemental briefing to address: 1) the status of ANF's requested relief and 2) whether, pursuant to La. R.S. Ann. §§ 22:658(A)(2) and 22:1220(B)(2) the parties had entered into a written agreement of settlement. On April 12, 2007, ANF submitted another memorandum which detailed that Lexington's check, dated December 1, 2006 contains an order to the drawee bank, indicating that the check is void after 90 days; it does not appear that the payees or endorsers (including ANF) have attempted to cash the check.[5]

---

[4] It is unclear whether Lexington was mistaken in its statement or whether it deliberately misled ANF.

[5] Neither party complied with the Court's order to brief the third-party claimant issue by citing relevant case law. Lexington merely provided a conclusory allegation that "no written agreements of settlement [have been] entered into between ANF and Lexington." And ANF, citing only one case (which does not deal with either bad-faith statute), merely claimed the

4

ANF moves for partial summary judgment seeking the amount due under the policy and penalties, costs, and attorneys' fees under the bad-faith statutes.

I.

A.  Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.[6]  No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination, a court "must view the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party."  Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 478 (5th Cir. 2002).

B.  La. R.S. Ann. Section 22:658

---

opposite: the facts "clearly reflect that they [unclear here whether "they" refers to Lexington and CIGNA or Lexington and ANF] reached a 'written agreement of settlement.'"

[6] Federal Rule of Civil Procedure 54(b) permits a district court to enter "final judgment as to one or more but fewer than all of the claims."

Louisiana Revised Statutes section 22:658 provides:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
> (2) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statues of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
> . . . .
> (4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty[7] percent damages on the amount found to be due from the insurer to the insured, or one thousand

---

[7] Louisiana amended this statute in 2006 to provide for fifty-percent damages. Prior to this, the statute provided for twenty-five percent damages.

>     dollars, whichever is greater, payable to the
>     insured, or to any of said employees, or in
>     the event of a partial payment or tender has
>     been made, fifty percent of the difference
>     between the amount paid or tendered and the
>     amount found to be due.
>     . . . .

In Woodruff v. State Farm Insurance Co., the Louisiana Fourth Circuit Court of Appeal considered whether section 658 applied both to claims brought by a named insured and by third parties against an insurer.  767 So. 2d 785, 789-90 (La. App. 4th Cir. 2000).  The court concluded that subsection (A)(1) applied only to claims made by the insured; in addition, a third party could not recover penalties under subsection (A)(4) because "the penalty provisions of Revised Statute 22:658 B are inapplicable to third party claimants such as plaintiff."  Id.  The court also noted that there was "no allegation that an agreement ha[d] been reached between the [third-party] claimant and [the insurer]" to trigger application of subsection (A)(2).  Id. at 789.  The Woodruff court, in noting that the section 658(B) penalty provisions "are inapplicable to third party claimants such as plaintiff" invoked an earlier case of the Louisiana First Circuit Court of Appeal.  Id. at 790 (emphasis added).  In Marie v. John Deere Insurance Co., that court acknowledged that "the penalty provisions of Revised Statute 658(B) are inapplicable to third party claimants such as [the plaintiff herein]," 691 So. 2d 1327, 1335 (La. App. 1st Cir. 1997) (emphasis

added),[8] but noted that there were "exceptions" to this rule where "third party claimants . . . have reached written agreements of settlement for property damage and medical expense claims" pursuant to subsection (A)(2), id. at 1327 n.5.

### C. La. R.S. Ann. Section 22:1220

Louisiana Revised Statutes section 22:1220 also mandates a duty of good faith similar to that imposed by section 658. Section 1220 provides:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages as a result of the breach.
> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed by Subsection A:
> . . . .
> (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
> . . . .
> (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is

---

[8] The Marie court noted that the Louisiana Third, Fourth, and Fifth Circuit Courts of Appeal agreed that the penalty provisions of subsection (B) were not generally available to third-party plaintiffs. See Marie v. John Deere Ins. Co., 691 So. 2d 1327, 1335 n.6 (La. App. 1st Cir. 1997) (citing Payton v. Colar, 518 So. 2d 1104, 1108 (La. App. 4th Cir. 1987); Guillory v. Gulf S. Beverages, 506 So. 2d 181, 183 (La. App. 5th Cir. 1987); Roy v. Glaude, 494 So. 2d 1243, 1245 (La. App. 3d Cir. 1986)).

> arbitrary, capricious, or without probable cause.
> . . . .
> C.  In addition to any general or special damages to which a claimant is entitled to breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. . . .

"[U]nlike penalties under [section 1220(C)]," the state high court has held, "penalties and attorney fees under [section 658(B)(1)] are mandatory, rather than discretionary, where a breach of [section 658(B)(1)] has occurred." Calogero v. Safeway Ins. Co. of La., 753 So. 2d 170, 174 (La. 2000).  Moreover, where section 1220 provides a greater penalty than section 658, the former supersedes the latter so that a claimant cannot recover penalties under both statutes.  Id.

Regarding third-party claims under section 1220, subsection (A) also applies only to claims by an insured against its insurer. Woodruff v. State Farm Ins. Co., 767 So. 2d 785, 788 (La. App. 4th Cir. 2000) (citing Theriot v. Midland Risk Ins. Co., 694 So. 2d 184 (La. 1997)).  And, subsection (B)(5) applies only to claims due an insured.  Id. at 788-89.  Thus, for a third party to recover under section 1220, it must establish one of the specifically enumerated acts in subsections (B)(1) through (4).

II.

A.  Amount Due Pursuant to the Policy

Lexington does not dispute that it owes $507,441.32 under its

the policy for the destruction of the River View Villas apartment complex. In fact, on November 30, 2006, Lexington, in a letter to CIGNA, characterized the amount owed as "the undisputed portion of [CIGNA's] claim." (emphasis added).[9] Moreover, after the commencement of this lawsuit (and after CIGNA completed the contractually required Proof of Loss), Lexington's adjustor released a check payable to CIGNA for that amount. However, because the check is no good after 90 days from issuance, it apparently could not be cashed by CIGNA.

The Court finds that summary judgment on this issue is inappropriate at this stage. Although the amount due under the policy is now fixed and uncontested, a material issue of fact leaves unclear on this record the relationship between CIGNA and ANF. ANF, for the purposes of this motion, does not contest Lexington's prior decision to pay CIGNA rather than ANF directly. Thus, ANF appears to be essentially seeking to sue on behalf of CIGNA, curiously, a nonparty to this lawsuit. Whether the Court should order the check be paid to CIGNA and whether such an order would be properly considered a remedy to ANF turns on the legal

---

[9] Because Lexington admitted it owed this sum and because it failed to object to ANF's assertion of this fact in ANF's uncontested issues of material fact (submitted with its motion for partial summary judgment), this fact is now deemed uncontested. See Loc. R. 56.2.

relationship between the two companies.[10]

Consequently, partial summary judgment on this issue is DENIED.

### B.  Bad Faith

The issue of penalties, costs, and attorneys' fees for the bad-faith tendering of an insurance claim is also not ripe for summary judgment. To make such an award under section 658 or section 1220, there is the threshold issue of whether ANF is an "insured" or a third-party "claimant" under the bad-faith statutes.

---

[10] See La. Civ. Code Ann. art. 24 (addressing the distinct legal personality of juridical persons such as corporations and partnerships).
    The Court also notes that depending upon the factual development of the relationship between ANF and CIGNA, prudential standing limitations may bar ANF's recovery under the policy. ANF, for the purposes of its summary judgment motion does not contest Lexington paying CIGNA. Consequently, the rights of a third party appear to be implicated. See, e.g., Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 15 n.7 (2004) ("'There are good and sufficient reasons for th[e] prudential limitation on standing when rights of third parties are implicated–the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.'") (citing Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 80 (1978)).
    Even if ANF were now seeking to be paid directly, a material issue of fact still exists as to whether ANF is an insured or an otherwise proper beneficiary under the policy entitled to the amount due. See discussion infra Part II.B. The Court also notes that although it ordered ANF to brief the status of its claims on March 29, 2007 in light of the check that Lexington sent to CIGNA (which turned out to be no good), ANF ignored the Court's order and did not respond to this issue. Why the parties have not resolved this dispute without the expense of litigation and Court intervention remains a mystery. Quite apparently, the money is owed to someone.

If ANF is the former, it needs to prove, according to the statutes, Lexington's arbitrary or capricious failure to pay a claim after receipt of a satisfactory proof of loss;[11] if ANF is the latter, it must prove Lexington's arbitrary or capricious failure to pay a settlement after a written agreement has been reached.[12]  See §§ 22:658, 22:1220.

However, even placing the issue of whether ANF is an "insured" or a third-party "claimant" aside, ANF must nonetheless prove that Lexington acted in bad faith in refusing to pay its claim (if ANF

---

[11] As previously noted, Lexington maintains that because the insured was contractually obligated under the Policy to specifically file a Formal Proof of Loss, only the filing of that form can constitute "satisfactory" proof of loss under the bad-faith statutes.  ANF contends that the contractual obligation does not define "satisfactory," which requires something more akin to simple notice.

[12] Although Lexington is correct to point out that provisions in sections 658 and 1220 apply solely to insured parties and ANF will lack standing under those provisions if it is not an "insured," other provisions in sections 658 and 1220 apply to third-party "claimants" and thus, even if ANF is not an "insured," it may still be possible for it to recover penalties and attorneys' fees.
   Woodruff v. State Farm Insurance Co., 767 So. 2d 785 (La. App. 4th Cir. 2000) does not support Lexington's point that ANF cannot recover any penalties and attorneys' fees under section 658 if it is not an "insured."  What Woodruff does acknowledge is that, by the very terms of the statute, only an insured may recover penalties and attorneys' fees under subsection (A)(1). Id. at 789-90.  Subsection (A)(2) of section 658, however, is not limited to actions by an insured against an insurer.  Id. at 789; Marie v. John Deere Ins. Co., 691 So. 2d 1327, 1335 & n.5 (La. App. 1 Cir. 1997).
   Similarly, ANF may also have standing as a third-party claimant to bring a claim under section 1220(B)(2).  Woodruff, 767 So. 2d at 788-89.

is an "insured") or in refusing to pay according to a written agreement of settlement (if ANF is a third-party "claimant"). Determining whether Lexington acted in bad faith -- whether Lexington's refusal to pay was "arbitrary, capricious, or without probable cause," La. Rev. Stat. Ann. §§ 22:658, 22:1220 -- is inherently and patently fact intensive. ANF contends that because Lexington admitted it owed $507,441.32 by November 2006, its refusal to pay is therefore arbitrary or capricious. However, Lexington's principal defense is confusion and what Lexington believed to be a lack of compliance with the express terms of its policy. Lexington points out that it was not until November 15, 2006–over two months after Hurricane Katrina destroyed the property in question–that ANF forwarded the Assignment of Partnership Interest to Lexington in an attempt to prove it was the proper beneficiary under the policy.[13]

---

[13] The Assignment raises several issues. Even assuming the Assignment is valid (though the date the Assignment is to become effective is conspicuously left blank), the Assignment transfers interests from CGLIC to River Coastal. There are thus two possible problems that Lexington could have considered as an impediment to payment. First, CGLIC made the transfer of interests according to the Assignment, but it was CGLIC's parent, CIGNA, that was the insured party, not CGLIC; it follows then that CGLIC could not transfer some interest that it did not possess. Second, even making the further assumption that CGLIC (instead of or in addition to CIGNA) possessed an interest in the insurance contract, it transferred that interest--according to the plain terms of the Assignment--to River Coastal, a limited partner in ANF; it did not transfer that interest directly to ANF. Therefore, under this line of reasoning, one possible conclusion is that River Coastal (and not ANF) is the proper beneficiary. What is clear is that the record is not amenable to

In any case, upon receiving the Assignment, Lexington responded the same day to ANF by indicating that it would only pay CIGNA, the named loss payee on the policy. As Lexington correctly points out in its opposition, "counsel for ANF has not presented any evidence, other than mere assertions, that the Assignment is indeed what it purports to be" or what ANF claims it to be. Given what Lexington has aptly termed the "confusion" that impacts this case, there are material issues of fact regarding whether Lexington arbitrarily or capriciously refused to pay. ANF has not carried its burden for summary judgment on this issue.[14]

ANF's most recent court filing reinforces the Court's conclusion that summary judgment is inappropriate. ANF observes bad faith because the check sent by Lexington's adjustor to CIGNA contained a 90-day void order. However, a bad faith conclusion does not necessarily follow from the sending of the check.[15] In short, there is a genuine dispute as to the material facts and

---

summary judgment. What seems also clear is that this rather incestuous relationship among all those dancing around the issue of who gets the money in the end should have been resolved without the needless expense of federal litigation.

[14] The same reasoning precludes partial summary judgment on the basis of section 1220.

[15] It is uncontested that the check was prepared earlier but was only recently released. One could view this latest setback as simply an administrative blunder rather than a deliberate act in bad faith, given that Lexington's adjustor, and not the company itself, was holding the check until CIGNA complied with the express terms of the policy.

14

whether they indicate bad or good faith on Lexington's part.[16]

Accordingly, ANF's motion for summary judgment is DENIED.

New Orleans, Louisiana, April 23, 2007.

_____
                              MARTIN L. C. FELDMAN
                              UNITED STATES DISTRICT JUDGE

---

[16] Moreover, if ANF is considered a third-party "claimant," there is still an outstanding factual issue regarding the necessary written agreement of settlement.  See §§ 22:658(A)(2), 22:1220(B)(2).  Although Lexington admitted prior to November 15, 2006 that it owed $507,441.32 pursuant to the Policy, ANF does not allege that Lexington agreed in writing to settle a "third party property damage claim," § 658(A)(2), as opposed to a damage claim between the loss payee (CIGNA) and the insurer.  While ANF's counsel informed Lexington on November 15, 2006 that CIGNA no longer had an ownership interest in ANF and that ANF was the proper beneficiary under the Policy, that same day, Lexington's counsel, after receiving the Assignment of Partnership Interest, stated that "[i]n speaking with [his] client [Lexington], because the [insurance] policy was issued to CIGNA, the check must be made out to CIGNA."  Thus, Lexington disputes making a "written agreement of settlement of the claim from any third party claimant," § 658(A)(2).  Consequently, there is a material issue as to whether ANF and Lexington agreed in writing to settle a claim between them rather than Lexington merely stating it had settled a claim between it and CIGNA.

In addition, on January 3, 2007, ANF's counsel sent a letter to Lexington's counsel querying, "What must my client do to receive the [$507,441.32] which your client admits it owes to us [ANF]?"  However, despite the language of this letter, Lexington never admitted it owed (and made a written settlement regarding) any money to ANF.  In fact, on November 15, 2006, Lexington clearly stated its position that it owed money to CIGNA and any check issued would be payable to CIGNA as loss payee and not to ANF.

15